Peter J. Mastan (SBN 190250)
peter.mastan@dinsmore.com
Brian M. Metcalf (SBN 205809)
brian.metcalf@dinsmore.com
**DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 1765
Los Angeles, CA 90071
Telephone: 213.335.7737

Counsel to Amy L. Goldman,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>YAO LIN,<br><br>       Debtor. | Case No. 1:23-bk-10733-MB<br><br>Chapter 7<br><br>**NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE AMY L. GOLDMAN FOR AN ORDER (A) APPROVING SALE OF ESTATE CLAIMS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363 (f), (B) GRANTING PROTECTION TO BUYER AS A GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(m), (C) WAIVING STAY UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004, AND (D) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF BRIAN M. METCALF AND AMY L. GOLDMAN IN SUPPORT THEREOF**<br><br>Date:     May 6, 2025<br>Time:    11:00 a.m.<br>Ctrm:   303<br>        21041 Burbank Blvd.<br>        Woodland Hills, CA 91367<br>Judge:  Hon. Martin R. Barash |

#46866406v3

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on May 6, 2025 at 11:00 a.m., a hearing will be held the Honorable Martin R. Barash in Courtroom 303 located at 21041 Burbank Blvd., Woodland Hills, CA 91367, for the Court to consider the *Motion of Chapter 7 Trustee Amy L Goldman for an Order (A) Approving Sale of Estate Claims Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. 363(f), (B) Granting Protection to Buyer as a Good Faith Purchaser Pursuant to 11 U.S.C. § 363 (m), (C) Waiving Stay Under Federal Rule of Bankruptcy Procedure 6004, and (D) Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, through the Motion, Amy L. Goldman, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of debtor Yao Lin (the "Debtor") in the above-captioned case, seeks an order (the "Order") that does the following:

1.      Grants the Motion.

2.      Approves the sale of the Estate's right, title, and interest in and to any and all claims and causes of action that the Estate has or may have against any parties, including without limitation all claims, causes of action, and/or avoidance actions and rights that the Estate has or may have under Chapter 5 of Title 11 of the United States Code (the "Bankruptcy Code") and applicable nonbankruptcy law against Yao Lin, Jia Chen, the Shinewoods Trust, Landford, LLC, and/or any other parties (collectively, the "Estate Claims"), to Beijing Soufun Science and Technology Development Co., Ltd. (the "Buyer") free and clear of all liens, claims, encumbrances and other interests pursuant to Bankruptcy Code section 363(f) for $78,000.

3.      Authorizes the Trustee to enter into and perform the obligations under the Sale and Assignment Agreement (the "Agreement") with the Buyer that is attached hereto as **Exhibit 1** and take all actions necessary to sell, assign, and convey the Estate Claims to the Buyer.

4.      Finds that the Trustee and the Buyer have entered into an arm's length transaction and that the Buyer is a good faith purchaser under Bankruptcy Code section 363(m).

5.      Grants relief from the automatic stay under Bankruptcy Code section 362(a) to the Buyer to the extent necessary to commence and continue any action or proceeding to litigate, recover, and collect the Estate Claims.

6.      Finds that adequate notice of the hearing on the Motion has been provided and waives the stay provisions of Federal Rules of Bankruptcy Procedure 4001(a)(3) and 6004(h).

7.      Provides that this Bankruptcy Court will retain jurisdiction to, *inter alia*, implement, interpret, and enforce the terms and provisions of the Order and Agreement.

8.      Grants such related relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that the Motion is made pursuant to Bankruptcy Code sections 362 and 363, Federal Rules of Bankruptcy Procedure 2002, 4001, and 6004, and Local Bankruptcy Rules 4001-1, 6004-1, and 9013-1 on the grounds that the proposed sale of the Estate Claims is in the best interests of the Estate and creditors because the proceeds will be applied to the fees of the Trustee and professionals, administrative expenses, and the other unsecured claim that was filed against the Estate.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on (a) the attached Memorandum of Points and Authorities; (b) Declaration of Brian M. Metcalf and exhibits thereto; (c) the pleadings on file with the Bankruptcy Court of which this Bankruptcy Court is requested to take judicial notice; and (d) such other pleadings and evidence as may be properly submitted in connection with the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be in writing; must be filed with the Bankruptcy Court and served upon the Trustee, the Buyer, the Office of the United States Trustee, and the Debtor at the addresses set forth below not later than 14 days before the hearing on the Motion; and must include a complete written statement of all reasons in opposition thereto or in support or joinder thereof, declarations and copies of all photographs and documentary evidence on which the responding party intends to rely, and any responding memorandum of points and authorities:

**Chapter 7 Trustee**
Amy L. Goldman
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071

**Counsel to Chapter 7 Trustee**
Peter J. Mastan
Brian M. Metcalf
Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles CA 90071

**Counsel to Buyer**
Leodis C. Matthews
Sarah O'Connell
Zhong Lun Law Firm, LLC
4322 Wilshire Blvd., Suite 200
Los Angeles, CA

**United States Bankruptcy Court**
Honorable Martin R. Barash
United States Bankruptcy Judge
21041 Burbank Boulevard, Suite 303
Woodland Hills, CA 91367

**Counsel to Debtor**
Jonathan J. Lo
Kelvin J. Lo
Lo & Lo LLP
506 North Garfield Ave., Suite 280
Alhambra, California 91801

**Office of the United States Trustee**
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve an objection may be deemed to be consent to the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that, in addition to appearing in person, parties in interest (and their counsel) may appear remotely at the hearing using ZoomGov audio and video through a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device with an integrated camera, microphone and speaker (such as an iPhone, iPad, Android phone or Android tablet).  The connection can be initiated by entering the "Meeting URL" into a web browser on any of these devices, provided the device is connected to the Internet. Individuals connecting in this manner will be prompted for the Meeting ID and Password shown below.  All persons are strictly prohibited from making any other recording of court proceedings, whether by video, audio, "screenshot," or otherwise.  Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions.  The following is the unique ZoomGov connection information for the hearing:

| | |
|---|---|
| Meeting URL: | https://cacb.zoomgov.com/j/1603864315 |
| Meeting ID: | 160 386 4315 |
| Password: | 473026 |
| Telephone: | (669) 254 5252 or (646) 828 7666 |

More information on using ZoomGov to participate in the hearing is available on the Bankruptcy Court's website at the following web address:

https://www.cacb.uscourts.gov/news/zoom-video-hearing-guide-and-training-participants.

DATED: April 11, 2025

Respectfully submitted,

DINSMORE & SHOHL LLP


By: /s/ *Brian M. Metcalf*
      Peter J. Mastan
      Brian M. Metcalf

Counsel to Amy L. Goldman,
Chapter 7 Trustee

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................... 1

II. BACKGROUND ...................................................................................................... 3

    A. THE BANKRUPTCY CASE, APPOINTMENT OF THE TRUSTEE, AND CLAIMS FILED AGAINST THE

    ESTATE.................................................................................................................. 3

    B. SUMMARY OF PROPOSED SALE OF ESTATE CLAIMS ............................................. 4

    C. THE ESTATE CLAIMS DO NOT APPEAR TO HAVE ANY LIENS OR ENCUMBRANCES .............. 5

III. ARGUMENT .......................................................................................................... 6

   1. THE COURT SHOULD APPROVE THE SALE OF THE ESTATE CLAIMS TO THE BUYER ................... 6

   A. THE SALE IS SUPPORTED BY A SOUND BUSINESS PURPOSE ................................. 6

   B. THE PURCHASE PRICE IS FAIR AND REASONABLE.............................................. 7

   C. NOTICE OF THE MOTION AND HEARING IS ADEQUATE AND APPROPRIATE UNDER THE

   CIRCUMSTANCES.................................................................................................. 7

   D. THE SALE IS IN GOOD FAITH .......................................................................... 7

   E. SALE OF THE ESTATE CLAIMS FREE AND CLEAR OF ALL CLAIMS, LIENS, ENCUMBRANCES,

   AND INTERESTS IS PROPER UNDER 11 U.S.C. § 363(F) .......................................... 8

   F. THE BUYER IS A GOOD FAITH PURCHASER ...................................................... 8

   2. THE BUYER SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY TO PURSUE THE

   ESTATE CLAIMS ................................................................................................... 9

IV. CONCLUSION...................................................................................................... 11

DECLARATION OF BRIAN M. METCALF...................................................................... 12

DECLARATION OF AMY L. GOLDMAN ....................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Continental Air Lines, Inc.*,
  780 F.2d 1223 (5th Cir. 1986 ................................................................................................ 6

*In re Ewell*,
  958 F.2d 276  (9th Cir. 1992) ............................................................................................... 9

*In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*,
  77 B.R. 15 (Bankr. E.D. Pa. 1987) ............................................................................... 7, 8, 9

*In re Lionel Corp.*,
  722 F.2d 1063 (2d Cir. 1983) ............................................................................................... 6

*In re Mac Donald*,
  755 F.2d 715 (9th Cir. 1985) .............................................................................................. 10

*In re Slates*,
  2012 Bankr. LEXIS 5159, No. EC-12-1168-KiDJu, at *31 (9th Cir. BAP Oct. 31, 2012) ............ 6

*In re Wilde Horse Enters., Inc.*,
  136 B.R. 830 (Bankr. C.D. Cal. 1991); ............................................................................. 6, 7

*Simantob v. Claims Prosecutor, LLC (In re Lahijani)*,
  325 B.R. 282, 289 (9th Cir. BAP 2005) ............................................................................... 6

*Walter v. Sunwest Bank (In re Walter)*,
  83 B.R. 14 (9th Cir. BAP 1988) ........................................................................................... 6

**Statutes**

11 U.S.C. § 362 ....................................................................................................................... 9,10
11 U.S.C. § 363 .................................................................................................................... 6,8,9
11 U.S.C. § 704 ....................................................................................................................... 6,7
Fed.R.Bankr.P. 4001 ................................................................................................................. 10
Fed.R.Bankr.P. 6004 ............................................................................................................... 7,10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

The Debtor filed a voluntary bankruptcy petition shortly after the Buyer obtained a domesticated judgment on an international arbitration award against him that exceeds $20 million.[1] Yet, despite previously having access to significant assets and enormous wealth, by the time the Debtor commenced this case he curiously claimed to have no income and virtually no assets left to pay creditors.  Based on the Trustee's investigation, the reason for the Debtor's supposed change of fortune appears straightforward.  Specifically, starting from initiation of the arbitration process and continuing after the massive award was issued against him, the Debtor and his spouse Jia Chen ("<u>Chen</u>") engaged in a deliberate scheme to defraud creditors through transferring his interests in separate, joint, and community property assets to Chen for no consideration.  Predictably, the intended result was to ostensibly leave the Debtor with no assets while he and Chen continued to functionally own and possess them and saddle the Debtor with significant liabilities that he had no ability to pay.

The justification offered by the Debtor and Chen for the transfers rivals the tawdriest soap opera plots.  Among other things, they claim the transfers were due to the Debtor's serial infidelity that Chen supposedly "discovered" <u>the day before the more than $20 million arbitration award was issued against the Debtor</u> and led to a consensual divorce settlement that allegedly occurred in China <u>less than one week after the arbitration award was announced</u> even though he and Chen had long-term domiciles in California and permanent resident status in the United States at the time.  Equally incredible, they claim that <u>less than three months later</u> they entered into a premarital agreement allegedly confirming the transfer of the Debtor's interest in the assets to Chen and <u>remarried</u> in China again while still maintaining their domiciles and permanent residences in California. According to the Debtor and Chen, through this purported transformation she now directly or indirectly solely owns all of their assets, and they are magically shielded from the Debtor's creditors.

/ / /

---

[1]    Capitalized terms used but not defined herein shall have them meanings ascribed to them in the notice to this Motion.

To state the obvious, the Trustee, the Bankruptcy Code, and California law reject this fiction and grant multiple remedies to avoid and recover the fraudulent transfers and obtain damages against Chen and other parties and transferees involved in their scheme.  While these types of claims are customarily brought by the Trustee on behalf of the Estate, under the unique circumstances in this case the Trustee does not believe that the Estate should pursue them because the Buyer has the overwhelming economic interest in the outcome of any litigation.  Specifically, besides the Buyer's claim that exceeds $20 million, the only other valid claims against the Estate include the fees and expenses for the Trustee and her professionals and one single proof of claim that asserts an unsecured claim for approximately $10,000 in credit card debt.  Thus, because the Buyer holds over 99.99% of the claims against the Estate, it would bear the vast majority of the costs incurred by the Trustee and Estate in litigation as well as receive the vast majority of any remaining proceeds that might be available for distribution to creditors.

Since the Buyer will absorb nearly all of the expenses and recoveries from litigation, the Trustee negotiated the Agreement with the Buyer to sell the claims the Estate may have against any other parties, including without limitation all avoidance actions that the Estate may have under Chapter 5 of the Bankruptcy Code and applicable nonbankruptcy law against the Debtor, Chen, Shinewoods Trust (her self-settled trust), Lanford LLC (another affiliate of the Debtor and Chen) and other parties.  Under the proposed sale terms, the Buyer will pay $78,000 to acquire the Estate Claims free and clear of all liens, claims, encumbrances and other interests on an "as is, where is" basis without recourse, representations, or warranties, including regarding the validity, enforceability, or collectability of the Estate Claims.  In addition, the Buyer will subordinate its claim and permit the Trustee to exclusively use the sale proceeds to pay administrative expenses, professional fees, and other claims against the Estate.  To implement the sale, the Trustee also seeks a finding that the Buyer is a good faith purchaser, relief from the automatic stay to allow the Buyer to commence or continue any action or proceeding to pursue, recover, and collect the Estate Claims. and waiver of the stay of the order.

Importantly, the sale proceeds will be applied to the administrative expenses and professional fees of the Estate and available for distribution on account of the only other proof of

1  claim that has been filed in the case.  As a result, the Trustee believes that selling the Estate Claims

2  to the Buyer ensures an outcome for the Estate in which a portion of administrative expenses are

3  satisfied and the claims of other legitimate creditors are paid in full while relieving it from the costs,

4  risks, and uncertainty of litigation.

5  **II.**    **BACKGROUND**

6        **A.    The Bankruptcy Case, Appointment of the Trustee, and Claims Filed Against**

7             **the Estate**

8        On May 29, 2023, the Debtor filed a voluntary petition for relief under Chapter 7 of the

9  Bankruptcy Code and commenced the above captioned bankruptcy case (the "Case").  The Trustee

10 is the duly appointed Chapter 7 trustee in the Case and continues to serve in that capacity.  As

11 explained above, prior to the initiation of the Buyer's international arbitration proceeding, the

12 Debtor had significant assets and wealth.  However, after the arbitration process started and the

13 award exceeding $20 million was issued in favor of the Buyer, the Debtor and Chen engaged in a

14 series of collusive fraudulent transfers to dissipate those assets and obstruct and defraud his

15 creditors, including through a sham foreign divorce and remarriage process that would not even be

16 recognized under California law.

17       Objectively viewed, the background and actions of the Debtor and Chen leading to the Case

18 indicate that it epitomizes a quintessential two-party dispute between a creditor with a substantial

19 judgment that seeks to collect on its claims and a debtor that dissipates their assets and then initiates

20 a bankruptcy proceeding to seek a discharge to escape liability.  Before the Debtor fled to the

21 shelter of this Court, the Buyer already had filed a lawsuit against Chen and her self-settled trust to

22 avoid and recover some of the transfers and obtain damages against them for their willful

23 participation in the scheme.  After the Buyer confirmed the arbitration award and the United States

24 District Court for the Central District of California entered a related judgment, the Debtor sought

25 bankruptcy protection to stall the Buyer's efforts to enforce the judgment, avoid and recover the

26 fraudulent transfers, and collect the debt that it was owed, apparently hoping to obtain a discharge

27 that would permanently prevent the Buyer from ever recovering on its claim.

28

The proofs of claim actually filed against the Estate exemplify the binary nature of this proceeding.  Although the Debtor scheduled multiple alleged debts, only the Buyer and one other creditor filed proofs of claim that may be allowed against the Estate.  In contrast to the Buyer's claim for more than $20 million, the other creditor's proof of claim is for only approximately $10,000 of credit card debt.  *See* Declaration of Brian M. Metcalf (the "Metcalf Decl.") at ¶ 4.  In other words, the Buyer holds 99.99% of the total amount of claims asserted against the Debtor and Estate and, thus, as a practical matter holds 99.99% of the financial stake in the outcome of the Case and any litigation involving the Estate Claims.

**B.    Summary of Proposed Sale of Estate Claims**

The Trustee performed a thorough investigation and analysis of the avoidance actions and other claims that Estate may have against Chen and other parties and developed a comprehensive strategy to pursue them.  *Id.* at ¶ 5.  Given this unique situation, however, the Trustee concluded that the best interests of the Estate and creditors would likely be served by selling the Estate Claims to the Buyer to immediately monetize their value and pay administrative expenses, professional fees, and the other creditor's claim in full.  *Id.* at ¶¶ 6-7.  The Trustee also concluded that this arrangement would allow the Estate to avoid the potential costs and risks involved in litigating the Estate Claims.  *Id.*  The Trustee then approached the Buyer and engaged in arms' length negotiations to sell the Estate Claims for an amount sufficient to satisfy these on the terms and conditions reflected in the Agreement.  *Id.* at ¶ 8.

The assets that the Trustee and Estate will sell to the Buyer and the terms and conditions for the transaction include the following:[2]

- The Buyer will purchase the Estate Claims that consist of all of the Estate's right, title, and interest in and to any and all claims and causes of action that the Estate has or may have against any parties, including without limitation all claims, causes of action, and/or avoidance actions and rights that the Estate has or may have under Chapter 5 of the Bankruptcy Code and applicable nonbankruptcy law against the Debtor, Chen, Shinewoods Trust, Landford, LLC, and/or any other parties.

/ / /

---

[2]    In the event of any conflict or inconsistency between the Agreement and this summary, the terms and conditions set forth in the Agreement shall govern and control.

4

- The Estate Claims will be sold, assigned, and conveyed to the Buyer (i) on an "AS IS" and "WHERE IS" basis without recourse of any kind or nature, without any representation or warranty whatsoever, whether express or implied, including no representation or warranty as to the validity, enforceability, and/or collectability of the Estate Claim and (ii) free and clear of all liens and encumbrances to the maximum extent permitted by Bankruptcy Code section 363(f).

- The Buyer has deposited and will pay $78,000 to the Trustee and Estate for the Estate Claims (the "Purchase Price").

- The Buyer will be deemed to (i) voluntarily subordinate its claim against the Estate to all other administrative claims and expenses, including without limitation the fees and expenses of the Trustee and her professionals, and all other claims against the Estate and (ii) agree that the Purchase Price may exclusively be used by the Trustee and the Estate to pay all other administrative claims and expenses, including without limitation the fees and expenses of the Trustee and her professionals, and all other unsecured claims against the Estate, without any distribution from the proceeds of the Purchase Price to the Buyer.

- The Trustee will seek an order approving the transaction and the Agreement, authorizing the sale of the Estate Claims free and clear of all liens, claims, encumbrances and other interests under Bankruptcy Code section 363(f), finding that the Buyer is a good faith purchaser under Bankruptcy Code section 363(m), and waiving the stay imposed under Federal Rule of Bankruptcy Procedure 6004(h).

Under the unusual circumstances of this Case, the Trustee believes that the Buyer is the only logical purchaser for the Estate Claims and there are no viable alternative purchasers. *Id.* at ¶ 10. The Trustee also has not been contacted by any other party that may be interested in purchasing the Estate Claims, and given that any consideration exceeding the Purchase Price would simply be returned to the Buyer on account of its claim, believes that an overbid process would provide no additional value or benefit for the Estate or creditors. *Id.*

**C.     The Estate Claims Do Not Appear to Have any Liens or Encumbrances**

The Debtor did not identify any liens against the Estate Claims in the schedules and no proofs of claims were filed that assert any potential liens against them. *Id.* at ¶ 12. Independently, the Trustee is not aware of any liens or other interests that have been asserted against the Estate Claims, and searches for UCC financing statements through the California Secretary of State did not reveal any such liens. *Id.* As a result, the Estate Claims do not appear to be subject to any known liens or other encumbrances.

/ / /

III.    **ARGUMENT**

1.    **The Court Should Approve the Sale of the Estate Claims to the Buyer**

Under Bankruptcy Code section 363, a trustee may sell assets of the estate where "(1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, *i.e.*, the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith." *In re Slates*, 2012 Bankr. LEXIS 5159, No. EC-12-1168-KiDJu, at *31 (9th Cir. BAP Oct. 31, 2012) (citing *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983)). As shown below, the Trustee's proposed sale of the Estate Claims to the Buyer easily satisfies these requirements.

A.    **The Sale is Supported by a Sound Business Purpose**

In Chapter 7 proceedings, the trustee is obligated to reduce to money assets of the estate. 11 U.S.C. § 704(a)(1). The decision to sell property out of the ordinary course of a debtor's business must be based on the reasonable business judgment of the trustee. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1070. In determining whether the business purpose is justified under section 363(b)(1), bankruptcy courts apply a flexible, case-by-case approach. *See Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 20 (9th Cir. BAP 1988) (stating that "the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike") (quoting *In re Continental Air Lines, Inc.*, 780 at 1226. Generally, the sale of property under Bankruptcy Code section 363(b)(1) should be approved if the trustee has established a sound business purpose for the proposed transaction. *Walter*, 83 B.R. at 17; *In re Wilde Horse Enters., Inc.*, 136 B.R. at 841. The business judgment standard is deferential to the decisions of the trustee. *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 289 (9th Cir. BAP 2005) (stating that "[o]rdinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection").

Here, the Trustee's decision to sell and assign the Estate Claims to the Buyer are supported by sound business judgment. The Trustee negotiated with the Buyer to reach a purchase price of $78,000, which can be used to pay administrative expenses and professional fees and the unsecured

claim that was asserted in the only other proof of claim that was filed against the Estate.  *See* Metcalf Decl. at ¶¶ 8.  Further, the sale of the Estate Claims to the Buyer will immediately satisfy the Trustee's obligations under Bankruptcy Code section 704 to liquidate and convert the assets of the Estate into funds that may be distributed to creditors.  Conversely, if sale is not consummated, the Trustee will be required to litigate the Estate Claims and face the associated costs, risks, and uncertainty that are inherent in all litigation without any guaranty of recovery or collection.  Under these circumstances, the Trustee has exercised sound and reasonable business judgment to sell the Estate Claims and use the proceeds to pay administrative expenses and the claims that other creditors filed against the Estate.

### B.    The Purchase Price is Fair and Reasonable

The Trustee believes that the purchase price for the Estate Claims is fair, reasonable, and in the best interest of the Estate given that the proceeds will be available to pay administrative expenses, professional fees, and the other unsecured claim against the Estate, and the Buyer would otherwise receive the remaining net recovery from any litigation.  *Id.* at ¶¶ 8-11.

### C.    Notice of the Motion and Hearing Is Adequate and Appropriate Under the Circumstances

The Trustee has served the Motion, including the notice attached hereto, on the parties required under the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules via the Court's Notice of Electronic Filing system or regular mail.  *Id.* at ¶ 11.  The Trustee also is concurrently filing a Form 6004-2 *Notice of Sale of Estate Property* for publication on the Court's website at https://www.cacb.uscourts.gov/notice-of-sales under Case No. 1:23-bk-10733-MB.  The Trustee submits that the notice of the Motion and proposed service and publication of the *Notice of Sale of Estate Property* is adequate and appropriate under the circumstances.

### D.    The Sale is in Good Faith

"Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 842 (internal quotation marks omitted).  In contrast, bad faith includes collusion between buyer and seller or actions that otherwise take unfair advantage of other potential purchasers, such as a collusive insider transactions.  *Id.*; *see also In re Indus.*

*Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).  The Trustee negotiated the sale of the Estate Claims with the Buyer at arms' length after extensive discussions concerning proposed terms and conditions, the potential claims that would be acquired by the Buyer, and the ultimate purchase price.  *See* Metcalf Decl. at ¶ 8-11.  The Trustee is not aware of any undisclosed terms or side deals or basis to challenge the value or integrity of the transaction.  *Id.*  In addition, the Estate Claims are not particularly liquid assets and there are no known established or publicly accessible markets to sell them.  *Id.*  As a result, the Trustee and Buyer negotiated the sale of the Estate Claims in good faith and for fair value.

**E.    Sale of the Estate Claims Free and Clear of All Claims, Liens, Encumbrances, and Interests is Proper Under 11 U.S.C. § 363(f)**

The Estate Claims also should be sold free and clear of all claims, liens, encumbrances, and interests.  Bankruptcy Code section 363(f) authorizes the sale of estate property "free and clear of any interest in such property of an entity" if (1) applicable non-bankruptcy law permits a sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.  11 U.S.C. § 363(f).

In this case, there do not appear to be any liens, claims, encumbrances, or interests asserted against the Estate Claims.  *See* Metcalf Decl. at ¶ 12.  In the event that any lien, claim, encumbrance, or interest is later asserted in connection with the proposed sale of the Estate Claims, the Trustee reserves the right to supplement the record to support that they still should be sold free and clear of any such lien, claim, encumbrance, or interest because they will be heavily disputed. To the extent necessary, any disputed liens, claims, encumbrances, or interests also may attach to the sale proceeds with the same priority and validity as they purportedly had against the Estate Claims.

**F.    The Buyer is a Good Faith Purchaser**

The Buyer is a good faith purchaser that is entitled to the protections of Bankruptcy Code section 363(m).  Bankruptcy Code section 363(m) protects the validity of a sale from "reversal or modification on appeal of an authorization under subsection (b) or (c) of [§ 363] of a sale . . . of

1  property" that the buyer "purchased . . . in good faith" where no stay has been issued. 11 U.S.C.

2  § 363(m).  Although the "Bankruptcy Code and Rules do not provide a definition of good faith,

3  courts generally have followed traditional equitable principles in holding that a good faith purchaser

4  is one who buys 'in good faith' and 'for value.'" *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992)

5  (citation omitted).  In contrast, lack of good faith may be shown by extreme circumstances such as

6  "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take

7  grossly unfair advantage of other bidders." *Id.* (citation omitted); *see also In re Indus. Valley*

8  *Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) (stating that

9  good faith requirement "focuses principally on the element of special treatment of the debtor's

10  insiders in the sale transaction").  None of those scenarios are present here.

11       To the best of the Trustee's knowledge, the Buyer acted in good faith in connection with this

12  transaction at all times.  *See* Metcalf Decl. at ¶¶ 8-11.  The Buyer agreed to pay $78,000 for the

13  Estate Claims, the transaction was negotiated at arm's length, the Trustee is not aware of any

14  undisclosed terms or side deals, and the Buyer is not an insider.  *Id.*  In light of these circumstances,

15  the Buyer is entitled to a finding that it purchased the Estate Claims in good faith and the protections

16  available under Bankruptcy Code section 363(m) for good faith purchasers.

17  **2.    The Buyer Should be Granted Relief from the Automatic Stay to Pursue the Estate**

18  **Claims**

19       Finally, the Trustee requests that the Buyer be granted relief from the automatic stay under

20  Bankruptcy Code section 362(a) to the extent necessary to pursue and collect the Estate Claims.

21  Although the Estate Claims will no longer be property of the Estate following the sale to the Buyer,

22  the automatic stay under Bankruptcy Code section 362 (a) still prohibits, among other things, the

23  commencement or continuation of an action to recover a claim against the debtor, enforcement of a

24  judgment against the debtor, acts to obtain possession of property of the estate or of property from

25  the estate or to exercise control over property of the estate, and acts to collect, assess, or recover a

26  claim against the debtor.  11 U.S.C. § 362.

27       Arguably, the Buyer's pursuit and efforts to recover its claim against the Debtor through the

28  Estate Claims might encompass various actions that would otherwise be prohibited by the automatic

stay.  Bankruptcy Code section 362(d) provides that the Court may grant relief from the automatic

stay for cause.  11 U.S.C. § 362(d).  "Because there is no clear definition of what constitutes

"cause," discretionary relief from the stay must be determined on a case by case basis."  *In re Mac*

*Donald*, 755 F.2d 715, 717 (9th Cir. 1985).

Here, the Trustee believes that the sale of the Estate Claims to the Buyer to pursue on its

own behalf supplies sufficient cause for the Court to grant the Buyer relief from stay to litigate them

to conclusion and ultimately recover.  Indeed, in the event the automatic stay were to prevent the

Buyer from doing so, it would not be willing to purchase the Estate Claims in the first place.  To

allow the Buyer to freely pursue and collect on the Estate Claims, the Trustee requests that the Court

grant relief from stay to the Buyer to commence and continue any action or proceeding to fully

litigate, recover, and collect the Estate Claims.  The scope of relief from stay granted to the Buyer

should include the ability to continue its existing fraudulent transfer action, initiate additional

lawsuits involving the Estate Claims against any parties or transferees, fully and completely litigate

the Estate Claims to final judgment against any parties or transferees, seek and obtain prejudgment

remedies against any parties, transferees, or fraudulently transferred assets, and collect and recover

on the Estate claims from any parties, transferees, or fraudulently transferred assets.

**3.    <u>The Stays of the Order Should Be Waived</u>**

The Trustee further requests that the Court waive the stays that may apply under Federal

Rules of Bankruptcy Procedure 4001(a)(3) and 6004(h) to the order approving the transaction.

Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that "[a]n order granting a motion for

relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order,

unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).  Likewise, Federal Rule of

Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of 14 days after entry of the order,

unless the court orders otherwise" to permit the prompt closing of the sale and receipt of the

proceeds.  Fed. R. Bankr. P. 6004(h).  Given the notice and opportunity to object or respond to the

proposed sale and related relief from the automatic stay, the Trustee believes it is appropriate, and

good cause exists, for the Court to waive these stays to facilitate the prompt closing of the sale of the

Estate Claims to the Buyer and permit it to pursue and collect them without further delay.  Through waiving the stay, the Trustee will realize the value of the Estate Claims and funds will be immediately available to pay administrative expenses and the claims of other creditors.  Thus, to complete the sale of the Estate Claims to the Buyer, the Trustee should be authorized the complete the sale of the Estate Claims and the Buyer should be given relief from the automatic stay to the extent necessary to pursue litigation immediately upon entry of the order approving the transaction.

**IV.**     **<u>CONCLUSION</u>**

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Motion.

DATED:  April 11, 2025                             Respectfully submitted,

DINSMORE & SHOHL LLP

By: _ */s/ Brian M. Metcalf*_____
    Peter J. Mastan
    Brian M. Metcalf
Counsel to Amy L. Goldman,
Chapter 7 Trustee

11

1

## <u>DECLARATION OF BRIAN M. METCALF</u>

2     I, Brian M. Metcalf, declare:

3     1.     I am an attorney admitted to practice before this Court at Dinsmore & Shohl LLP,

4 counsel to Amy L. Goldman, the Chapter 7 Trustee ("<u>Trustee</u>") of the bankruptcy estate ("<u>Estate</u>")

5 of Yao Lin (the "<u>Debtor</u>") in the above-captioned bankruptcy case (the "<u>Case</u>").

6     2.     Except as expressly stated otherwise, I have personal knowledge of the facts set forth

7 below and could and would competently testify under oath thereto if requested to do so.

8     3.     This declaration is being submitted in support of the *Motion of Chapter 7 Trustee*

9 *Amy L Goldman for an Order (A) Approving Sale of Estate Claims Free and Clear of All Liens,*

10 *Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. 363(f), (B) Granting Protection to*

11 *Buyer as a Good Faith Purchaser Pursuant to 11 U.S.C. § 363 (m), (C) Waiving Stay Under*

12 *Federal Rule of Bankruptcy Procedure 6004, and (D) Granting Relief From the Automatic Stay* (the

13 "<u>Motion</u>").

14     4.     The Court may take judicial notice of the following:

15       (a)     On May 9, 2023, the Debtor filed a voluntary petition for relief under Chapter

16              7 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

17       (b)     On July 17, 2023, the Court issued the *Notice of Possible Dividend and Order*

18              *Fixing Time to File Claims* that was served on creditors and instructed them

19              to file proofs of claim by no later than October 20, 2023 [Docket No. 15].

20       (c)     The claims register reflects that only two proofs of claim have been filed

21              against the Estate by American Express National Bank in the amount of

22              $10,127.69 [Claim No. 1] and Beijing Soufun Science and Technology

23              Development Co., Ltd. in the amount of $21,763,380.17 [Claim No. 2].

24     5.     On behalf of the Trustee, I reviewed and analyzed the Debtor's schedules and

25 statement of financial affairs, testimony from examinations of the Debtor conducted under

26 Bankruptcy Code section 341(a), and other documents obtained informally and through discovery

27 from various sources, including East West Bank and Jia Chen ("<u>Chen</u>"). I also thoroughly reviewed

28 and analyzed documents related to potential claims and avoidance actions that may be available for

the Trustee to pursue on behalf of the Estate, including without limitation the fraudulent transfer

lawsuit commenced by Beijing Soufun Science and Technology Development Co., Ltd. (the

"Buyer") against Chen and the Shinewoods Trustee prior to the initiation of this Case, and

researched and developed the supporting background, legal theories, and remedies to support these

claims and avoidance actions.

6.      Based on the review and analysis I performed, presently there seem to be extremely

limited assets in the Estate that could be used to fund administrative expenses, professional fees, and

payments to creditors.  Instead, the primary sources of funding for the Estate and creditors appear to

consist primarily of the potential claims and avoidance actions that the Trustee would bring on

behalf of the Estate against third parties such as Chen and the Shinewoods Trust to avoid and

recover fraudulent transfers and other damages.  In my experience, there are always costs, risks, and

uncertain outcomes that are inherent to this type of litigation.  In addition, the proofs of claim filed

in this Case indicate that the Buyer holds over 99.99% of the total claims that may be allowed

against the Estate and the overwhelming economic interest in the outcome of any litigation and net

proceeds that might be available for distribution to creditors.

7.      In light of these unique circumstances, in consultation with the Trustee we evaluated

the options and best ways to maximize the value of the Estate for creditors.  Given that the Buyer

will effectively bear the costs and benefits from any litigation pursued by the Estate – and had

already filed a fraudulent transfer lawsuit against Chen and other defendants before the Debtor

commenced the Case – we concluded that it was worth exploring selling the claims and avoidance

actions of the Estate to the Buyer to pay administrative expenses, professionals fees, and the only

other unsecured claim that was filed in the Case.

8.      After estimating that $78,000 would be sufficient for these purposes, I then contacted

the Buyer's counsel to negotiate the potential sale of the Estate's claims and avoidance actions for

an acceptable purchase price.  After several lengthy discussions and rounds of negotiation over the

course of nearly six months, the Trustee and Buyer agreed to enter into the Sale and Assignment

Agreement attached hereto as **Exhibit 1** (the "Agreement") to sell the Estate's claims and avoidance

actions to the Buyer for $78,000 (the "Purchase Price") on the terms and conditions described therein.

9.      As further described in the Agreement, the claims and avoidance actions being sold to the Buyer include all of the Estate's right, title, and interest in and to any and all claims and causes of action that the Estate has or may have against any parties, including without limitation all claims, causes of action, and/or avoidance actions and rights that the Estate has or may have under Chapter 5 of the Bankruptcy Code and applicable nonbankruptcy law against the Debtor, Chen, Shinewoods Trust, Landford, LLC, and/or any other parties (collectively, the "Estate Claims").

10.      On behalf of the Trustee, I evaluated the potential market for the Estate Claims and believe that it is highly unlikely that any party besides the Buyer would be interested in purchasing the Estate Claims from the Estate.  The Trustee also has not been contacted by any other potential buyer or party that might pay more for the Estate Claims, and based on the circumstances of this Case, believes in her business judgment that there are no other viable alternative purchasers.  In addition, considering that any consideration exceeding the Purchase Price would simply be returned to the Buyer on account of its claim, I believe that an overbid process would provide no additional value or benefit for the Estate or creditors.

11.      In sum, the Trustee made the determination that the Buyer is in the best position to purchase the Estate Claims, and after conducting the negotiations with the Buyer, believes the Purchase Price for the Estate Claims is fair, reasonable, and in the best interests of the Estate and creditors under the circumstances of this Case.  Other than this transaction and the sale of the Estate Claims to the Buyer, the Trustee does not have any relationship with the Buyer.  The Agreement was negotiated between the Trustee and the Buyer at arm's length and in good faith, each party was independently represented by counsel in the sale negotiations and transaction, and the Trustee entered into the Agreement on behalf of the Estate in good faith.  The terms for the sale are as set forth in the Agreement and the Trustee has not made, and to the best of my knowledge nobody else has made, any side deals and there are no undisclosed terms regarding the transaction.

12.      At my instruction, UCC-1 and tax lien searches on the Debtor were conducted through the California Secretary of State lien records and the Los Angeles County records.  The

14

search results did not reveal any liens or encumbrances against the Estate Claims.  The schedules

and statement of financial affairs filed by the Debtor also do not reveal any liens or encumbrances

against the Estate Claims.  I am not aware of any liens or encumbrances against the Estate Claims.

13.    Filed concurrently with this Motion is a Notice of Sale (LBR Form 6004-2).  The

Motion and Notice of Sale are being served on all known creditors of the Estate, the U.S. Trustee's

Office, the Debtor, the Buyer, and parties who are entitled to receive notice or have requested

special notice.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this 11th day of April, 2025 in Santa Barbara, California.

/s/ *Brian M. Metcalf*
BRIAN M. METCALF

## DECLARATION OF AMY L. GOLDMAN

I, AMY L. GOLDMAN, declare:

1.      I am an attorney admitted to practice before this Court and the duly appointed the Chapter 7 Trustee  of the bankruptcy estate ("Estate") of Yao Lin in the above-captioned bankruptcy case.

2.      Except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

3.      This declaration is being submitted in support of the *Motion of Chapter 7 Trustee Amy L Goldman for an Order (A) Approving Sale of Estate Claims Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. 363(f), (B) Granting Protection to Buyer as a Good Faith Purchaser Pursuant to 11 U.S.C. § 363 (m), (C) Waiving Stay Under Federal Rule of Bankruptcy Procedure 6004, and (D) Granting Relief From the Automatic Stay* ("Motion").

4.      With the assistance of my counsel, I negotiated the sale of the Estate's right, title, and interest in and to any and all claims and causes of action that the Estate has or may have against any parties, including without limitation all claims, causes of action, and/or avoidance actions and rights that the Estate has or may have under Chapter 5 of the Bankruptcy Code and applicable nonbankruptcy law against Yao Lin, Jia Chen, the Shinewoods Trust, Landford, LLC, and/or any other parties (collectively, the "Estate Claims"), to Beijing Soufun Science and Technology Development Co., Ltd. (the "Buyer") for $78,000.00 (the "Purchase Price").

5.      I believe there is a limited universe of potential buyers for the Estate Claims given that the Buyer holds more than 99.99% of the claims that have been filed against the Estate and would be the primary beneficiary of any recoveries from the litigation.  Upon consultation with counsel, I also determined that the costs, risks, and uncertain outcomes from pursuing the Estate Claims, and fact that any net recoveries in excess of the professional fees incurred by the Estate would be distributed to the Buyer on account of its claim, supported selling and assigning the Estate Claims to the Buyer to pursue on its own behalf.

16

6.      After weighing these considerations, I entered into the Sale and Assignment Agreement attached hereto as **Exhibit 1** (the "<u>Agreement</u>").  As reflected in the Agreement, subject to the approval of this Court and other terms and conditions, the Buyer will acquire the Estate Claims in exchange for the Purchase Price.  I am in receipt of the full Purchase Price, which is being held in a segregated account pending approval of the transaction.

7.      Other than this transaction, I do not have any relationship with the Buyer.  To the best of my knowledge, information and belief, the Agreement was negotiated at arm's length, and the terms of the sale are as set forth in the Agreement.  I have not made, and to the best of my knowledge, nobody else has made any undisclosed side deals.

8.      On behalf of the Estate, I entered into the Agreement in good faith, and believe that the sale and assignment of the Estate Claims on the terms set forth in the Agreement is fair, reasonable, and in the best interests of the Estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st day of March, 2025 in Los Angeles, California.


_____
Amy L. Goldman

# EXHIBIT 1

## SALE AND ASSIGNMENT AGREEMENT

Subject to Bankruptcy Court approval, this Sale and Assignment Agreement (the "Agreement"), dated March 31, 2025 (the "Effective Date"), is made and entered into by and between Beijing Soufun Science and Technology Development Co., Ltd., a corporation, organized and existing under the laws of the People's Republic of China ("Buyer"), and Amy Goldman, in her capacity as the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Yao Lin (the "Debtor") in the bankruptcy case titled *In re Yao Lin*, Bankruptcy Case No. 1:23-bk-10733-MB (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court"). The Trustee and Buyer are each a "Party", and together, the "Parties".

## RECITALS

A.      On May 29, 2023, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

B.      The Trustee was appointed as the Chapter 7 trustee for the Estate.

C.      The Trustee wishes to sell and assign to Buyer, and Buyer wishes to purchase and acquire from the Trustee and the Estate, all of the Estate's right, title, and interest in and to any and all claims and causes of action that the Estate has or may have against any parties, including without limitation all claims, causes of action, and/or avoidance actions and rights that the Estate has or may have under Chapter 5 of the Bankruptcy Code and applicable nonbankruptcy law against Yao Lin, Jia Chen, the Shinewoods Trust, Landford, LLC, and/or any other parties (collectively, the "Estate Claims").

D.      The sale and assignment of the Estate Claims to Buyer is subject to approval of the Bankruptcy Court and will be completed following entry of an order in the Bankruptcy Case approving and authorizing the sale and assignment of the Estate Claims to Buyer (the "Sale Order").

E.      In connection with sale and assignment of the Estate Claims, Buyer will voluntarily subordinate its claims against the Estate to (a) all other administrative claims and expenses, including without limitation the fees and expenses of the Trustee and her professionals, and (b) all other unsecured claims for which a Proof of Claim (Form 410) has been filed against the Estate.

The Parties therefore agree as follows:

1.      Incorporation of Recitals.  Recitals A through E above are incorporated into and made a part of this Agreement.

2.      Bankruptcy Court Approval.

2.1      Notwithstanding any other provision of this Agreement, the Trustee shall have no obligation to sell, assign, transfer, or convey the Estate Claims until the

1

#46377883v2

Bankruptcy Court enters the Sale Order that, in substance (i) approves this Agreement, (ii) authorizes the Trustee to make the "AS IS" and "WHERE IS" assignment of the Estate's interest in the Estate Claims as contemplated herein, (iii) determines that this Agreement was made in good faith in an arm's-length transaction, and (iv) authorizes the Trustee to perform the terms of this Agreement.

2.2    The Trustee shall have the obligation to seek approval of this Agreement in accordance with Section 2.1 and shall file the motion (the "Approval Motion") seeking approval of this Agreement within 10 business days after the date on which the Trustee receives the following: (a) a fully executed copy of this Agreement (without any modification or interlineation), and (b) the Purchase Price (as defined below), and such Purchase Price having cleared the banking process.  If the Approval Order is: (a) not entered within 90 days after the filing of the Approval Motion, or (b) appealed, then the Trustee may, in the unfettered exercise of her discretion, terminate her attempt to obtain the Sale Order by written notice to Buyer. If the Trustee terminates her attempt to obtain the Sale Order pursuant to this Section 2.2, then the Trustee shall return to buyer all funds actually received by the Trustee on account of this Agreement (without the accrual of interest), and the Parties shall be as they were before they signed this Agreement.  In the event that the Sale Order is entered, the Bankruptcy Court specifically finds that Buyer is a good faith purchaser in accordance with 11 U.S.C. § 363(m), an appeal from the Sale Order is filed, but no stay of the Sale Order pending appeal is obtained, then the Trustee, in her unfettered exercise of discretion, may (but shall not be obligated to) perform this Agreement and the Purchase Price (defined below) shall irrevocably become property of the Estate.  Notwithstanding any other provision of this Agreement, (a) the Trustee shall have no obligation to defend any appeal from the Sale Order or to pursue any appeal from the denial of the Approval Motion, and (b) if Buyer fails to timely perform any act required under Section 3 of this Agreement, the Trustee shall have no obligation to seek approval of this Agreement.

2.3    Buyer agrees to cooperate with and perform all acts requested by the Trustee to obtain entry of the Sale Order and shall not take any action that might delay or interfere with the Trustee's efforts to obtain entry of the Sale Order.

3.    Purchase Price.  Buyer shall pay $78,000.00 (the "Purchase Price") for the Estate's interest in the Estate Claims to the Trustee contemporaneously with Buyer's execution and delivery to the Trustee of this Agreement.  The Purchase Price shall be made through (i) cashier's or bank check payable to "Amy Goldman, Trustee" representing immediately available funds that are not subject to the liens, claims, or interests of any third party, and delivered to the Trustee in care of Peter Mastan, Dinsmore & Shohl, LLP, 550 S. Hope Street, Suite 1765, Los Angeles, CA 90071 or (ii) wire transfer pursuant to directions delivered to Buyer by the Trustee.

4.    Closing.  The sale and assignment of the Estate Claims to Buyer shall close as soon as practicable after the later of (a) full execution of this Agreement by the Parties, (b) receipt of the Purchase Price by the Trustee and the Estate, and (c) entry of the Sale Order and any such Sale Order has either (i) not been stayed or timely appealed or (ii) any such stay or appeal has been dismissed or

2

affirmed in favor of the Trustee and is not subject further review (the "Closing").  Notwithstanding the foregoing, if the Sale Order is appealed and includes a good faith finding under Section 363(m) of the Bankruptcy Code, the Trustee in her sole discretion may elect to proceed with Closing the sale.  At the Closing, the Trustee shall be deemed to have sold, assigned, transferred, and conveyed the Estate's right, title, and interest in and to the Estate Claims to Buyer, free and clear of all liens, claims, and interests to the maximum extent permitted by Section 363(f) of the Bankruptcy Code, and Buyer shall be deemed to have acquired and accepted the Estate Claims.

5.    Buyer Exclusive Right to Recoveries.  Upon the Closing, Buyer shall have the sole and exclusive right to prosecute, settle, enforce, or otherwise dispose of the Estate Claims in its sole discretion, and any proceeds, recoveries, settlements, judgments, or other amounts obtained in connection with the Estate Claims shall belong exclusively to Buyer.  The Estate, including the Trustee, shall have no right, claim, interest, or entitlement to any portion of such proceeds, nor shall such proceeds be subject to any claims of the Estate's creditors, administrative expenses, or distributions in the Bankruptcy Case.  The Trustee and the Estate expressly waive any rights to assert any claim, lien, or interest in any recovery obtained by Buyer in connection with the Estate Claims.

6.    Subordination of Buyer Claim.  Upon the Closing, Buyer shall be deemed to have (i) voluntarily subordinated its claim against the Estate to all other administrative claims and expenses, including without limitation the fees and expenses of the Trustee and her professionals, and all other claims for which a Proof of Claim (Form 410) has been filed against the Estate and (ii) agreed that the Purchase Price may exclusively be used by the Trustee and the Estate to pay all other administrative claims and expenses, including without limitation the fees and expenses of the Trustee and her professionals, and all other claims for which a Proof of Claim (Form 410) has been filed against the Estate, without any distribution from the proceeds of the Purchase Price to Buyer.

7.    Trustee's Representations and Warranties.  Subject to Bankruptcy Court approval, the Trustee hereby represents and warrants for the benefit of Buyer as follows:

(a)    Subject to the terms of this Agreement, this Agreement is (i) binding on the Trustee; (ii) enforceable in accordance with its terms; and (iii) the Trustee is authorized to consummate the sale and assignment of the Estate Claims;

(b)    The Trustee is authorized to enter into this Agreement;

(c)    The Trustee is selling, assigning, transferring, and conveying the Estate's right, title, and interest in and to the Estate Claims to Buyer; and

(d)    Upon completion of the sale and assignment of the Estate Claims, Buyer will receive all of the Estate's right, title, and interest in and to the Estate Claims, free and clear of any encumbrance, lien, claim, charge, security interest or other interests.

(e)    Notwithstanding Sections 7(a) through (d) above, the Trustee's authority to enter and be bound by this Agreement is subject to Bankruptcy Court approval as set forth herein.

3

#46377883v2

8.    Buyer's Representations and Warranties.  Buyer represents and warrants to the Trustee as follows:

(a)    Buyer has all requisite power and authority to enter into and perform its obligations under this Agreement and purchase the Estate Claims, subject to required Bankruptcy Court approval. Buyer has duly executed and delivered this Agreement, and subject to required Bankruptcy Court approval, this Agreement is a valid and binding obligation of Buyer enforceable in accordance with its terms.

(b)    Buyer has sufficient funds available to pay the full amount of the Purchase Price.  The source of funds the Purchase Price will not violate any applicable law or regulation, and Buyer will not fund the Purchase Price in violation of any applicable law or regulation.

(c)    Buyer conducted its own independent investigation, review, and analysis of the Estate Claims.  Except as set forth in Section 7, Buyer is purchasing the Estate Claims without any representations or warranties of any kind from the Trustee.

(d)    Buyer acknowledges and agrees that the sale and assignment of the Estate's interest in the Estate Claims pursuant to this Agreement is on an "AS IS" and "WHERE IS" basis without recourse of any kind or nature, without any representation or warranty whatsoever, whether express or implied, including no representation or warranty as to the validity, enforceability, and/or collectability of the Estate Claims.

9.    Interpretation and Construction; Applicable Law.  This Agreement shall, in all respects, be interpreted, construed, enforced, and governed by and under the internal laws of the State of California (without regard to conflict of laws principles) and, as applicable, federal bankruptcy law.  The Parties hereby waive California Civil Code § 1654.  This Agreement is the product of negotiation among the Parties and represents the jointly conceived and bargained-for language mutually determined by the Parties to express their intentions in entering into this Agreement.  Any uncertainty or ambiguity existing herein shall not be interpreted against either Party based upon that Party's role in the drafting of this Agreement.  Instead, this Agreement is to be construed in a neutral manner, and no term or provision of this Agreement as a whole is to be construed more or less favorably to any one Party.

10.    Entire Agreement.    This Agreement contains the entire agreement and understanding among the Parties concerning the matters set forth herein and supersedes all prior or contemporaneous stipulations, negotiations, representations, understandings, and discussions among the Parties or their respective counsel with respect to the subject matter of this Agreement. No other representations, covenants, undertakings, or other earlier or contemporaneous agreements respecting these matters may be deemed in any way to exist or bind any of the Parties. The Parties acknowledge that they have not executed this Agreement in reliance on any promise, representation, or warranty other than those contained in this Agreement.

11.    Modification.  This Agreement may not be modified except as mutually agreed to in a writing signed by all the Parties.

4

12.    <u>No Waiver</u>.  No waiver, forfeiture or forbearance of or concerning any provision of this Agreement shall be deemed or shall constitute a waiver, forfeiture or forbearance of or concerning any of the other provisions hereof, or a continuing waiver, forfeiture or forbearance.

13.    <u>Severability</u>.  If, for any reason, any non-material provision of this Agreement is determined to be invalid or unenforceable, such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and the remaining provisions of this Agreement shall be construed, performed and enforced as if the reformed provision had been included in this Agreement at inception.

14.    <u>Counterparts</u>.  This Agreement may be executed in several counterparts, and any and all such executed counterparts, taken together, will constitute a single agreement binding on all Parties to this Agreement.  Facsimiles of signatures or electronically transmitted signatures may be taken as the actual signatures.

15.    <u>Jurisdiction and Venue</u>.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement (and/or any ancillary document executed pursuant hereto); and that said jurisdiction is hereby deemed to be "core" jurisdiction of the Bankruptcy Court; and, in the event of any dispute before the Bankruptcy Court, the Parties hereto agree and consent to the entry of findings and a final order and judgment by the Bankruptcy Court; provided, however, that if the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction with respect to any such action: (a) such abstention or refusal shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such action, and (b) the Parties hereto expressly agree that any disputes between such Parties shall be submitted to the exclusive jurisdiction of the United States District Court for the Central District of California, Los Angeles Division, and to the extent that that the foregoing venue lacks jurisdiction, to the maximum extent permitted by law to the Superior Court for the State of California, County of Los Angeles.

*[Signatures on Following Page]*

#46377883v2

Exhibit 1, page 23

The Trustee and Buyer executed this Agreement as of the Effective Date.

Trustee:                                                    BUYER:


_____          _____
Amy Goldman, in her capacity as           By:    Beijing Soufun Science and Technology
Chapter 7 trustee for the bankruptcy      Development Co., Ltd.
estate of Yao Lin

                                                           Its:

The Trustee and Buyer executed this Agreement as of the Effective Date.

Trustee:                                            BUYER:

_____        _____ (Hong Liu)

Amy Goldman, in her capacity as         By:  Beijing Soufun Science and Technology
Chapter 7 trustee for the bankruptcy    Development Co., Ltd.,
estate of Yao Lin

                                        Its:  _____General Counsel_____


                                        Approved by its attorneys:

                                        _____
                                        Leodis C. Matthews
                                        Zhong Lun Law Firm, LLP
                                        4322 Wilshire Blvd., Ste 200
                                        Los Angeles, CA 90010

                                        Tele: (323) 930-5690
                                        Email:  LeodisMatthews@ZhongLun.Com

6

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

> 550 S. Hope Street, Suite 1765
> Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled ***NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE AMY L. GOLDMAN FOR AN ORDER (A) APPROVING SALE OF ESTATE CLAIMS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363 (f), (B) GRANTING PROTECTION TO BUYER AS A GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(m), (C) WAIVING STAY UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004, AND (D) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF BRIAN M. METCALF AND AMY L. GOLDMAN IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 11, 2025,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **April 11, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 11, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/11/2025 | Katrice Ortiz | /s/ Katrice Ortiz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

18

**In re Yao Lin**
**U.S.B.C. – San Fernando Division**
**Case No. 1:23-bk-10733-MB**

## I. SERVED ELECTRONICALLY VIA NEF:

- **Amy L Goldman (TR)** marisol.jaramillo@lewisbrisbois.com, AGoldman@iq7technology.com;ecf.alert+Goldman@titlexi.com
- **Clifford P Jung** curtis@jyllp.com, ry@jyllp.com;jessica@jyllp.com
- **Jonathan J. Lo** contact@lolollp.com, jonathan@lolollp.com
- **Kelvin J Lo** kelvin@lolollp.com
- **Peter J Mastan** peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- **Leodis Clyde Matthews** leodismatthews@zhonglun.com
- **Brian M Metcalf** brian.metcalf@dinsmore.com, brian-metcalf-9774@ecf.pacerpro.com;katrice.ortiz@dinsmore.com
- **Jonathan Serrano** Jonathan@MarguliesFaithLaw.com, vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com
- **United States Trustee (SV)** ustpregion16.wh.ecf@usdoj.gov

## II. SERVED VIA REGULAR U.S. MAIL:

**Debtor:**
Yao Lin
435 Woodbluff Rd
Calabasas, CA 91302-2209

Jia Chen
Yao Lin
Trustee to Shinewoods Trust, Dated October 8, 2021
435 Woodbluff Rd
Calabasas, CA 91302-2209

Jia Chen
Yao Lin
Trustee to Shinewoods Trust, Dated October 8, 2021
31663 Broad Beach Rd.
Malibu, CA 90265

Jia Chen
435 Woodbluff Rd
Calabasas, CA 91302-2209

### CREDITORS AND INTERESTED PARTIES

Employment Development Dept.
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

Industrial and Commercial
Bank of China (USA
388 E Valley Blvd., Unit 18
Alhambra, CA 91801-5117

Office of Finance,
City of Los Angeles
200 N Spring St., RM 101 City Hall
Los Angeles, CA 90012-3224

San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

American Express
PO BOX 981537
El Paso, TX 79998-1537

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

|

Beijing SouFun Sci. &
Tech. Dev. Co
c/o Marc Feinstein
400 S. Hope Street, 18th Floor
Los Angeles, CA 90071-2801

China Overseas Scholars Foundation
111 NanHeYan Street
DongCheng District
Beijing, China

Industrial Commercial Bank of China
168 West Valley Blvd.
San Gabriel, CA 91776-3723

Shanghai Aiwu Investment Co.
Laiyifen Plaza,
1339 HuSongGongLu
Songjiang District
Shanghai, China

Yubo Zhang
JingKongXiaoQu 10-8-81
RiZhao St., Dongan District
Mudanjiang
Heilongjiang, China

## III. **SERVED VIA OVERNIGHT DELIVERY (FED EX):**

**United States Bankruptcy Court**
Honorable Martin R. Barash
United States Bankruptcy Court – Central District of California
21041 Burbank Boulevard, Suite 342/Crtrm 303
Woodland hills, CA 91367